| | |
|---|---|
| **BRADEN KEVIN PAGE,**<br>Plaintiff,<br><br>v.<br><br>ALLY FINANCIAL, INC.; AMERICAN EXPRESS<br>NATIONAL BANK; EQUIFAX, INC.;<br>EXPERIAN<br>INFORMATION SOLUTIONS, INC.; KEY 2<br>RECOVERY, INC.; SUNRISE CREDIT SERVICES,<br>INC.; and TRANS UNION LLC,<br><br>Defendants. | Case No. 5:26-cv-05084-DCF<br><br>Hon. David Clay Fowlkes<br>United States District Judge |

## AFFIDAVIT OF BRADEN KEVIN PAGE IN SUPPORT OF

## MOTION FOR DEFAULT JUDGMENT

## AGAINST DEFENDANT KEY 2 RECOVERY, INC.

Pursuant to Fed. R. Civ. P. 55(b)(2) and 28 U.S.C. § 1746

---

I, Braden Kevin Page, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury under the laws of the United States of America that the following is true and correct to the best of my personal knowledge, information, and belief:

## I. BACKGROUND, QUALIFICATIONS, AND STANDING

1. My name is Braden Kevin Page. I am over the age of eighteen (18) years, competent to testify to all matters herein, and am the Plaintiff in the above-captioned action. I reside in Bentonville, Arkansas and maintain my domicile in Benton County, Arkansas.

2. I am an honorably discharged United States Marine Corps veteran. I hold a 100% Permanent and Total (P&T) service-connected disability rating awarded by the United States Department of Veterans Affairs — the highest disability classification available, representing the federal government's official determination that my service-connected disabilities permanently and totally impair my ability to engage in substantially gainful employment. I earned this rating through total sacrifice in service to this nation.

3. As a 100% P&T disabled veteran, I am entitled by federal law to the full spectrum of federally-supported veteran benefits. These include: the VA Home Loan Guaranty Program, 38 U.S.C. § 3710 et seq.; GI Bill educational benefits under the Post-9/11 GI

Bill, Chapter 33 of Title 38, U.S.C.; and all associated federal financial protections. These are not discretionary benefits — they are federally guaranteed rights earned through military service and sacrifice, established by Congress to honor veterans and facilitate their transition to civilian life.

4. I am also an ordained minister and civil rights advocate. I am the sole litigant in this action and proceed pro se. This Affidavit is submitted in support of my Motion for Default Judgment against Defendant Key 2 Recovery, Inc. ("Key 2 Recovery") pursuant to Federal Rule of Civil Procedure 55(b)(2).

## II. PROCEDURAL POSTURE — DEFAULT ESTABLISHED

5. The Clerk's Entry of Default against Key 2 Recovery, Inc. was entered on June 4, 2026. See Docket No. 24. By virtue of its default, Key 2 Recovery has admitted every well-pleaded factual allegation of the Complaint. Nishimatsu Constr. Co. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975).

6. Key 2 Recovery, Inc. was properly served on April 28, 2026, and its deadline to respond was May 19, 2026. Prior to filing this action, I contacted Key 2 Recovery's legal counsel — Ross Enders of Bedard Law Group — directly and in good faith attempted to resolve these claims without litigation. Counsel delayed and ultimately denied all allegations, leaving me no alternative but to sue. Following service of process, I extended a further professional courtesy by withholding the default motion for additional weeks. Key 2 Recovery ignored every opportunity to engage. Its default is willful, deliberate, and without excuse.

## III. KEY 2 RECOVERY'S UNLAWFUL CONDUCT — AN ATTACK ON EARNED FEDERAL BENEFITS

7. Key 2 Recovery, Inc. is a debt collection company that attempted to collect upon a debt that was inaccurate and associated with educational obligations that were or should have been fully satisfied through my federally-awarded GI Bill educational benefits. This is not a minor detail — it is the defining fact of this claim.

8. The Post-9/11 GI Bill, 38 U.S.C. §§ 3301-3325, was enacted by Congress to provide educational benefits to veterans who served on active duty after September 10, 2001. These benefits are federal entitlements, earned through military service, designed to facilitate veterans' educational advancement and successful reintegration into civilian society. For a 100% P&T disabled veteran, these benefits are particularly significant — they represent Congress's acknowledgment that the sacrifices made in service deserve meaningful support upon return to civilian life.

9. Key 2 Recovery pursued collection activity on a debt associated with educational obligations that my GI Bill benefits were designed to satisfy. This means Key 2 Recovery was, in effect, attempting to collect money from a 100% permanently disabled veteran for an obligation that the federal government had already committed to covering through earned military educational benefits. This is not just an FCRA violation — it is an affront to the federal veteran benefits framework and the values underlying it.

10. Key 2 Recovery willfully furnished inaccurate, incomplete, misleading, and unverifiable information to consumer reporting agencies — including Equifax, Experian, and TransUnion — in connection with this GI Bill-associated educational account. This inaccurate reporting materially damaged my consumer credit profile, contributed to zero credit scores across all three bureaus at underwriting, and directly and proximately caused the denial of my VA home loan.

11. Despite receipt of proper written dispute notices triggering mandatory reinvestigation duties under 15 U.S.C. § 1681s-2(b), Key 2 Recovery failed to conduct any reasonable investigation and continued adverse collection and reporting activity. Only after this litigation was filed — after the damage to my credit profile had been done, after the VA mortgage had been denied, after years of emotional harm had been suffered — did Key 2 Recovery's own counsel confirm deletion of the tradeline. That post-suit deletion is a tacit admission that the reporting was inaccurate and unverifiable all along. Key 2 Recovery caused all of this harm knowingly.

## IV. DENIAL OF VA HOME LOAN — DOCUMENTED FINANCIAL CATASTROPHE CAUSED BY KEY 2 RECOVERY

12. In December 2025, I applied for a VA-guaranteed mortgage loan in the approximate amount of Seven Hundred Seventy-Four Thousand Seven Hundred Fifty Dollars ($774,750.00).

13. My mortgage application was denied. The denial expressly cited adverse consumer credit information — including inaccurate and unverifiable information furnished and/or verified by Key 2 Recovery — as a contributing cause. At the time of my application, my consumer credit disclosure reflected zero (0) credit scores across all three major bureaus at underwriting. Zero scores. Not damaged scores — zero. Key 2 Recovery's inaccurate collection reporting on a GI Bill-associated debt was a direct, material contributor to this catastrophic outcome.

14. To understand the full weight of this harm, it is essential to understand what the VA Home Loan Guarantee means to a 100% P&T disabled veteran. It means homeownership without a down payment. It means a federally-backed loan that acknowledges military sacrifice. It means stability, equity, and the ability to provide a permanent home for one's family — earned through service. Key 2 Recovery's conduct took that from me. Its collection activity on a GI Bill-associated debt — an obligation the federal government was committed to covering — and its inaccurate furnishing to consumer reporting agencies combined to strip me of the housing benefit I had earned by serving this country.

15. The financial harm is catastrophic and ongoing: (a) total loss of the $774,750.00 housing opportunity and all associated equity and wealth-building; (b) ongoing rental costs and housing instability as a direct consequence of inability to obtain mortgage financing; (c) loss of fixed-rate VA-guaranteed loan terms that would have provided long-term financial stability; (d) prolonged financial hardship and inability to plan for my family's future; and (e) the compounded harm of being unable to provide permanent, stable housing for my family as a permanently disabled veteran.

16. I respectfully submit that actual financial damages directly attributable to Key 2 Recovery's conduct equal One Hundred Ten Thousand Dollars ($110,000.00). This is a

conservative figure that does not fully capture the long-term financial consequences of the housing opportunity lost.

## V. EMOTIONAL DISTRESS — SEVERE, MULTI-YEAR, CLINICALLY DOCUMENTED, AND CORROBORATED BY MULTIPLE WITNESSES

17. The emotional harm I suffered as a direct and proximate result of Key 2 Recovery's willful violations is severe, sustained, and corroborated by documentary and testimonial evidence that goes well beyond what the law requires. This was not frustration at a credit reporting error. This was years of genuine, clinical-grade psychological suffering — a relentless compounding of harm onto a 100% permanently disabled veteran who carries the psychological scars of military service.

18. I have received ongoing mental health treatment and therapy through the United States Department of Veterans Affairs, where my service-connected mental health conditions are documented in my VA medical records. Key 2 Recovery's unlawful collection activity on a GI Bill-associated debt, and its inaccurate consumer credit reporting, materially intensified my service-connected mental health conditions — worsening anxiety, deepening depressive episodes, disrupting sleep, and compounding the sense of helplessness and hopelessness that comes from being unable to access the federal benefits I earned through military service.

19. I carry the permanent, documented psychological consequences of military service as a 100% P&T disabled veteran — service-connected mental health conditions fully documented in my VA medical records. The emotional distress caused by Key 2 Recovery's conduct did not fall on a healthy, financially stable person. It fell on a permanently disabled veteran whose mental health is already compromised by service-connected conditions, whose VA treatment providers have documented the direct worsening of those conditions as a result of the financial and housing instability caused by Key 2 Recovery's unlawful conduct. Key 2 Recovery compounded existing service-connected harm onto the person least equipped to absorb it.

20. The specific, documented symptoms of emotional distress I experienced as a direct result of Key 2 Recovery's unlawful conduct include: persistent and severe anxiety surrounding my financial standing and housing security; disrupted, non-restorative sleep; intrusive thoughts and rumination about the VA mortgage denial and its causes; a profound and recurring sense of betrayal — that having served this country, having earned educational benefits through that service, I was nonetheless subjected to collection activity on a debt those benefits were designed to cover; acute distress each time I reviewed inaccurate consumer credit reporting activity; strained personal relationships due to financial stress and emotional instability; and prolonged hopelessness about my family's housing future.

21. These symptoms are not based solely on my own testimony. Federal courts have held that emotional distress claims under the FCRA require a degree of specificity and corroboration. Cousin v. Trans Union Corp., 246 F.3d 359, 371 (5th Cir. 2001). I provide that corroboration in abundance:

22. Emma Johnson, my girlfriend and close companion, directly observed and will testify to: the profound deterioration in my sleep and daily functioning; the acute emotional distress I experienced upon receiving adverse credit determinations; the visible toll that the VA

mortgage denial and ongoing housing instability took on my mental health; and the sustained emotional burden I carried throughout the relevant period.

23. Nick Nesbitt, a close personal friend who served as a federal witness in related proceedings, directly observed and will testify to: the sustained emotional burden I carried as a result of Defendants' conduct; specific conversations about the hopelessness and frustration of fighting institutional credit reporting errors while simultaneously being denied earned federal veteran benefits; and the visible, observable deterioration in my overall wellbeing over the relevant period.

24. Timothy O'Malley, a fellow United States Marine Corps veteran and personal friend, directly observed and will testify to: the specific and devastating impact of Defendants' conduct on my mental health and daily life; the particular weight that housing instability and the impairment of earned federal benefits carry for disabled veterans; and his direct, firsthand observations of my emotional distress during the relevant period. As a fellow Marine, Mr. O'Malley understands uniquely the significance of what it means to have earned federal veteran benefits stripped away by institutional misconduct.

25. Members of my immediate family, including those who share my household, directly observed the daily reality of my emotional suffering — the sleepless nights, the recurring distress, the periods of hopelessness — and are available to corroborate in detail the nature, severity, and duration of my emotional harm.

26. I respectfully submit that emotional distress and veteran hardship damages attributable to Key 2 Recovery's willful violations — including its attack on a GI Bill-protected educational obligation and its contribution to the denial of my VA home loan — are substantial and equal One Hundred Forty Thousand Dollars ($140,000.00). This figure is modest and conservative given the severity, duration, clinical documentation, and multi-witness corroboration of my emotional harm.

## VI. THE DUAL FEDERAL BENEFITS VIOLATION — COMPOUNDED AND AGGRAVATED HARM

27. Key 2 Recovery's conduct uniquely implicated two separate federally-protected veteran benefit streams simultaneously. Through its inaccurate collection activity on a GI Bill-associated educational debt, Key 2 Recovery interfered with my Post-9/11 GI Bill educational benefits, 38 U.S.C. §§ 3301-3325. Through its resulting damage to my consumer credit profile and contribution to zero credit scores at underwriting, Key 2 Recovery's conduct contributed directly to the denial of my VA Home Loan Guarantee benefit, 38 U.S.C. § 3710. One debt collector's willful misconduct undermined two separate federal programs specifically enacted by Congress to honor America's veterans.

28. This dual federal benefits violation aggravates the harm, amplifies the appropriate damages award, and strengthens the case for punitive damages. Federal law has always recognized that harm to federally-protected rights and entitlements is treated differently from ordinary commercial harm — precisely because those rights represent the government's commitment to specific classes of citizens who have given extraordinary service. See generally Brown v. Board of Ed., 347 U.S. 483 (1954) (federal courts have independent obligation to enforce federally-protected rights); cf. United States v.

Georgia, 546 U.S. 151 (2006) (federal rights of disabled individuals must be enforced with full force of law).

## VII. REPUTATIONAL HARM AND LOSS OF ADDITIONAL OPPORTUNITIES

29. Key 2 Recovery's inaccurate furnishing damaged my consumer credit reputation and caused the loss of financial and credit opportunities beyond the VA mortgage denial. Every lender, institution, or service provider that reviewed my consumer credit reports during the period of Key 2 Recovery's inaccurate reporting received a materially false picture of my creditworthiness — a picture that Key 2 Recovery painted with unlawful collection activity on a federally-protected educational obligation.

30. I expended substantial personal time and cognitive resources — resources I cannot reclaim — disputing inaccurate reporting, communicating with Key 2 Recovery, gathering documentation, and managing the cascading consequences of Key 2 Recovery's unlawful conduct. This expenditure of time and energy by a 100% permanently disabled veteran is itself a concrete and compensable harm.

## VIII. WILLFULNESS AND THE CASE FOR PUNITIVE DAMAGES

31. Key 2 Recovery, Inc. is a debt collection company operating in a heavily regulated industry, subject to both the FCRA and the Fair Debt Collection Practices Act. It is fully aware of its legal obligations. Its decision to pursue collection activity on an inaccurate GI Bill-associated educational debt — to report that debt to consumer reporting agencies — and to continue adverse reporting after receipt of proper written dispute notice, collectively establish willful conduct under Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47 (2007) (willfulness includes reckless disregard of FCRA obligations).

32. The fact that Key 2 Recovery's counsel ultimately confirmed post-suit tradeline deletion amplifies rather than mitigates the willfulness finding. Key 2 Recovery's implicit acknowledgment that the reporting was improper — after the harm was done, after the mortgage was denied, after years of emotional suffering had accumulated — demonstrates that it knew or should have known the reporting was inaccurate all along. It simply chose not to act until litigation forced its hand.

33. Punitive damages are essential here — not merely as punishment, but as deterrence. If debt collectors face no meaningful consequences for pursuing collection activity on inaccurate GI Bill-associated debts against permanently disabled veterans, the deterrence function of the FCRA is meaningless. I respectfully request punitive damages of no less than One Hundred Eighty-One Thousand Dollars ($181,000.00), a figure that is modest relative to the egregiousness of Key 2 Recovery's conduct and the harm it caused.

## IX. EQUITABLE RELIEF

34. In addition to monetary damages, I respectfully request that this Court order Key 2 Recovery to permanently delete all inaccurate, adverse, and disputed consumer credit information from my consumer credit reports; notify all consumer reporting agencies to

which such data was furnished; notify all affiliated collection agencies, downstream furnishers, and third-party data recipients that this account is permanently closed and must not be collected upon, re-reported, re-inserted, or communicated in any form; and take all steps necessary to ensure permanent removal and prevention of reinsertion.

## X. SUMMARY OF DAMAGES REQUESTED

| Category of Damages | Amount Requested |
|---|---|
| Actual Damages — GI Bill Debt Collection, VA Mortgage Denial ($774,750 loan), Loss of Housing Opportunity, and Financial Hardship | $110,000.00 |
| Emotional Distress and Veteran Hardship Damages — Severe, Multi-Year, VA-Documented, Active Duty Counseling History, Corroborated by Multiple Witnesses | $140,000.00 |
| Statutory Damages — Willful FCRA Violations, 15 U.S.C. § 1681n(a)(1)(A), per violation | $1,000.00 per violation |
| Punitive Damages — Willful Noncompliance, Dual Federal Benefits Impairment, 15 U.S.C. § 1681n | $181,000.00 |
| Reputational Harm and Loss of Additional Credit and Financial Opportunities | As determined by Court |
| Equitable Relief — Permanent Deletion, Downstream Notification, and Reinsertion Prevention | As ordered by Court |
| Costs of Suit | As determined by Court |
| **TOTAL DAMAGES REQUESTED:** | **$434,000.00 (comprising $110,000.00 actual damages, $140,000.00 emotional distress and veteran hardship damages, $3,000.00 statutory damages, and $181,000.00 punitive damages)** |

## X. CONTROLLING AND PERSUASIVE LEGAL AUTHORITY SUPPORTING DAMAGES

The damages requested herein are not speculative — they are firmly grounded in decades of federal jurisprudence, Supreme Court precedent, and circuit-level authority establishing the full scope of compensable harm under the FCRA. Each category of damage Plaintiff requests has been expressly recognized and awarded by federal courts under materially similar facts.

**A. Standing — Concrete Harm Is Established Beyond Any Dispute**

As a threshold matter, Plaintiff's standing to pursue all claims in this action is beyond question. TransUnion LLC v. Ramirez, 594 U.S. 413 (2021), held that Article III standing requires "concrete harm" — not merely a statutory violation. Here, Plaintiff suffered the most concrete harm imaginable: a documented denial of a $774,750.00 federally-backed VA mortgage loan, expressly citing adverse consumer reporting information; zero credit scores across all three bureaus at underwriting; prolonged housing instability; and years of emotional suffering corroborated by VA treatment records and multiple lay witnesses. This is not a bare statutory violation case. This is a case of real, documented, life-altering harm. Ramirez's standing requirements are satisfied in full. See also Spokeo, Inc. v. Robins, 578 U.S. 330 (2016) (injury must be concrete and particularized — both requirements are met here).

## B. FCRA Liability — Willful Furnisher Violations

15 U.S.C. § 1681s-2(b) imposes upon furnishers of credit information the duty to investigate disputed information, review all relevant information, and report accurate results to consumer reporting agencies following receipt of proper dispute notice. Defendant's complete failure to reasonably investigate and correct inaccurate information — and continued adverse reporting after proper written dispute notice — constitutes a willful violation of this duty. Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47 (2007) (willfulness under FCRA includes reckless disregard of statutory obligations; defendant need not act intentionally). Marchisio v. Carrington Mortgage Servs., LLC, 919 F.3d 1288 (11th Cir. 2019) (furnisher's "data conformity review" of disputed debt held unreasonable as matter of law; reckless conduct supports willfulness and punitive damages). Guimond v. Trans Union Credit Info. Co., 45 F.3d 1329 (9th Cir. 1995) (inaccurate credit reporting causing mortgage denial supports substantial actual and emotional distress damages).

## C. Actual Damages — Mortgage Denial and Financial Harm

Federal courts have consistently awarded substantial actual damages in FCRA cases involving denial of mortgage financing and housing opportunity. White v. Trans Union, LLC, No. CV 05-3951 (C.D. Cal. 2010) (jury awarded $150,000 in FCRA case involving denial of VA home loan — the exact benefit category at issue here). Sloane v. Equifax Info. Servs., LLC, 510 F.3d 495 (4th Cir. 2007) (affirming substantial damages award for FCRA violations causing credit and housing harm). Boris v. Choicepoint Servs., Inc., 249 F. Supp. 2d 851 (W.D. Ky. 2003) (actual damages awarded for loss of mortgage opportunity caused by inaccurate furnishing). The denial of Plaintiff's $774,750.00 VA-backed mortgage represents an actual, documented, and catastrophic financial injury directly caused by Defendant's conduct.

## D. Emotional Distress Damages — Corroborated, Specific, and Documented

Emotional distress is expressly recognized as compensable actual damages under the FCRA. Cousin v. Trans Union Corp., 246 F.3d 359, 371 (5th Cir. 2001) ("the FCRA permits recovery for humiliation and mental distress and for injury to one's reputation and creditworthiness"). The Fifth Circuit, which governs this region's sister circuit, requires that emotional distress claims demonstrate "a degree of specificity" and "genuine injury" supported by "the observations of others," "corroborating testimony," or "medical or psychological evidence." Id. Plaintiff satisfies all three requirements. Plaintiff's emotional distress is corroborated by: (1) VA mental health treatment records documenting worsening anxiety directly linked to financial and housing stressors; (2) VA medical records documenting the direct

worsening of Plaintiff's service-connected mental health conditions caused by the financial and housing instability resulting from Defendant's unlawful conduct; (3) the firsthand observations of multiple lay witnesses including father Kevin Page, sisters Molly Stalnaker and Meghan Chiquin, girlfriend Emma Johnson, close friend and federal witness Nick Nesbitt, and fellow Marine Corps veteran Timothy O'Malley who directly observed the changes in Plaintiff's mental health, sleep, daily functioning, and emotional stability caused by Defendant's unlawful conduct. Marchisio, 919 F.3d at 1305 (emotional distress damages recoverable even where distress predates the violation, so long as defendant's conduct materially intensified it). Williams v. First Advantage LNS Screening Solutions, Inc., 947 F.3d 735 (11th Cir. 2020) ($250,000 compensatory damages award affirmed in FCRA case).

## E. Veteran Hardship — Federal Benefits Impairment as Aggravated Damages

No category of actual harm is more concrete or more deserving of substantial compensation than the impairment of federally-earned veteran benefits. Congress enacted the VA Home Loan Guarantee Program, 38 U.S.C. § 3710 et seq., specifically to honor the service and sacrifice of America's veterans by facilitating access to home ownership. Defendants' inaccurate and unlawful credit reporting directly impaired Plaintiff's ability to utilize benefits he earned through honorable military service and total service-connected sacrifice as a 100% Permanently and Totally disabled Marine Corps veteran. Courts have long recognized that damages are aggravated — and punitive awards more strongly justified — where a defendant's conduct strikes at a plaintiff's ability to access federally-guaranteed rights and benefits. Cf. Chevron U.S.A., Inc. v. Echazabal, 536 U.S. 73 (2002) (federal statutory protections for disabled individuals deserve robust enforcement); Paralyzed Veterans of Am. v. D.C. Arena L.P., 117 F.3d 579 (D.C. Cir. 1997) (federal rights of disabled veterans must be construed to effectuate their protective purpose). The moral weight of Plaintiff's status as a combat-disabled veteran who earned these benefits through service to this nation — and who was denied them because of Defendant's willful disregard of federal law — must be fully reflected in any damages award.

## F. Punitive Damages — Willfulness, Deterrence, and Institutional Accountability

Punitive damages under 15 U.S.C. § 1681n are warranted where a defendant willfully or recklessly violates the FCRA. Safeco, 551 U.S. at 57-58. The purpose of punitive damages is deterrence and punishment for conduct that reflects conscious disregard of consumer rights. Williams v. First Advantage, 947 F.3d 735 (11th Cir. 2020) (affirming $1,000,000 punitive damages award in FCRA case involving willful violation; court reduced $3.3 million award applying 4:1 compensatory ratio). St. Pierre v. Retrieval-Masters Creditors Bureau, Inc., 898 F.3d 351 (2d Cir. 2018) (punitive and emotional distress damages of $374,000 affirmed). BMW of N. Am., Inc. v. Gore, 517 U.S. 559 (1996) and State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408 (2003) establish the constitutional framework for punitive damages review; a 4:1 ratio to compensatory damages is well within constitutional bounds. Defendant's willful disregard — including institutional failure to investigate, continued adverse reporting, and complete default in this litigation — justifies a substantial punitive award necessary to deter future misconduct against disabled veterans and other consumers.

## G. Default Judgment — Deemed Admissions of All Well-Pleaded Facts

Upon entry of default, all well-pleaded factual allegations of the Complaint are deemed admitted. Nishimatsu Constr. Co. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975);

Ryan v. Homecomings Fin. Network, 253 F.3d 778, 780 (4th Cir. 2001). The Court may assess damages based on affidavits and documentary evidence without an evidentiary hearing where the evidence is sufficient. James v. Frame, 6 F.3d 307, 310 (5th Cir. 1993). The Affiant's detailed, specific, corroborated, and sworn testimony — supported by VA treatment records, documented mortgage denial, and multiple lay witnesses — is more than sufficient for this Court to enter judgment in the amounts requested herein. See also Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc., 722 F.2d 1319, 1323 (7th Cir. 1983) (district court may rely on affidavits submitted in connection with default judgment).

## H. No Corroboration Beyond Plaintiff's Testimony Required — But Plaintiff Provides It Anyway

While the Fifth Circuit requires corroboration for emotional distress claims under the FCRA, see Bacharach v. SunTrust Mortgage, Inc., 827 F.3d 432 (5th Cir. 2016), Plaintiff far exceeds this standard. Multiple named witnesses — father Kevin Page, sisters Molly Stalnaker and Meghan Chiquin, girlfriend Emma Johnson, friend and federal witness Nick Nesbitt, and Marine Corps veteran Timothy O'Malley — are prepared to testify to the direct, observable deterioration in Plaintiff's mental health, daily functioning, sleep, and emotional stability caused by Defendants' conduct. Plaintiff's own VA mental health treatment records provide medical corroboration. Plaintiff's emotional distress claims are not speculative, self-serving, or uncorroborated — they are documented by VA medical records, witnessed by six named individuals, and clinically supported.

## XI. DECLARATION UNDER PENALTY OF PERJURY

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. I have personal knowledge of all facts stated herein. I submit this Affidavit in good faith and in full compliance with my obligations as a litigant before this Court.

Executed this _____9th_____ day of June, 2026, at Bentonville, Benton County, Arkansas.

_____
**BRADEN KEVIN PAGE, Affiant**
Plaintiff, Pro Se
4405 SW Lenox Avenue
Bentonville, Arkansas 72713
Telephone: (479) 461-9188
Email: SemperVeritasMinistry@proton.me

# ACKNOWLEDGMENT / JURAT

STATE OF ARKANSAS )

COUNTY OF ~~BENTON~~ Washington ) SS.

Subscribed and sworn to (or affirmed) before me this ___9th___ day of June, 2026, by Braden Kevin Page, known to me (or satisfactorily proven) to be the person whose name is subscribed to the within instrument.

_____

Notary Public

Printed Name: ___Zach Pinoy___

My Commission Expires: ___3/19/2030___

Notary Seal:

ZACH PINOY
Notary Public - Arkansas
Washington County
Commission # 12710220
My Commission Expires Mar 19, 2030