**EXHIBIT A**

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE WESTERN DISTRICT OF ARKANSAS**

**FAYETTEVILLE DIVISION**

| | |
|---|---|
| BRADEN KEVIN PAGE, <br><br> Plaintiff, <br><br> vs. <br><br> ALLY FINANCIAL, INC.; AMERICAN EXPRESS NATIONAL BANK; EQUIFAX, INC.; EXPERIAN INFORMATION SOLUTIONS, INC.; KEY 2 RECOVERY, INC.; SUNRISE CREDIT SERVICES, INC.; and TRANS UNION LLC, <br><br> Defendants. | Civil Case No.: 5:26-cv-05084-DCF <br><br> Hon. D. Clay Fowlkes |

**PLAINTIFF'S SUR-REPLY TO DEFENDANT AMERICAN EXPRESS**

**NATIONAL BANK'S REPLY DECLARATION IN SUPPORT OF ITS MOTION**

**TO SET ASIDE CLERK'S ENTRY OF DEFAULT**

Plaintiff Braden Kevin Page, proceeding pro se, respectfully submits this Sur-Reply, pursuant to leave of Court, in response to the Declaration of Sean P. Hamilton filed by Defendant American Express National Bank ("American Express") on June 19, 2026 [D.E. 42]. This Sur-Reply is limited to the new matter raised in that declaration and does not reargue positions already fully briefed in Plaintiff's Opposition to American Express's Motion to Set Aside Clerk's Entry of Default [D.E. 35].

1

## I. AMERICAN EXPRESS'S OWN PUBLISHED SERVICE-OF-PROCESS PAGE CONTRADICTS ITS "INTERNAL ROUTING" EXPLANATION

American Express's Declaration asserts, for the first time, that service in this matter "was routed incorrectly internally because it did not come from American Express's registered agent for claims and lawsuits, CT Corporation," and that American Express's Litigation Team "did not become aware of this pending action" until June 11, 2026 — more than five weeks after Operations Assistant Johanna Esparza accepted service at American Express's Subpoena Response Unit on May 5, 2026. [D.E. 42 para.para. 12–13].

American Express's own current, publicly published legal-order-processing policy directly undercuts this explanation. As of the filing of this Sur-Reply, American Express's website states, under the heading "Service of Process Requirements for Subpoenas and Similar Legal Orders":

> "[M]ail your legal order to: American Express, Subpoena Response Unit, 43 Butterfield Circle, El Paso, TX 79906 . . . American Express Entities to be Served: American Express National Bank (bank, pre-paid, loan, credit card products) . . . American Express does not accept service of subpoenas at any American Express office location."

(American Express, Legal Order Processing, available at americanexpress.com/en-us/company/legal/subpoena-response-unit/ (last visited June 23, 2026).)

This is the exact address at which Ms. Esparza accepted service of the Summons and Complaint in this action on May 5, 2026. By American Express's own published representation to the public, that address is not a stray mailroom or an unrelated office that simply mishandled an unexpected delivery — it is the designated facility American Express itself holds out as the place to send legal process directed at American Express National Bank,

the very entity sued in this case. American Express's own page goes further, affirmatively stating that no other American Express office location accepts service at all. American Express cannot now credibly claim that legal process delivered to the one location it tells the world to use was so foreign to its operations that the document went unnoticed for thirty-seven days.

Whatever distinction American Express may attempt to draw between subpoena processing and service of a summons and complaint, the underlying point stands unrebutted: the facility and the personnel at 43 Butterfield Circle exist specifically to receive, evaluate, and process legal documents on behalf of American Express National Bank. An internal failure to forward a properly received document from that facility to litigation counsel is a failure of American Express's own process — not a defect attributable to Plaintiff, and not the kind of excusable neglect contemplated by Fed. R. Civ. P. 55(c). *See Johnson v. Dayton Elec. Mfg. Co.*, 140 F.3d 781, 784 (8th Cir. 1998) (good cause to set aside default examines, inter alia, the culpability of the defaulting party's conduct).

American Express's published policy addresses only two categories of senders: law firms, who are directed exclusively to CT Corporation with no alternative address provided, and government agencies, who may use either CT Corporation or 43 Butterfield Circle. Plaintiff is neither. Plaintiff is a pro se individual litigant, a category American Express's own published policy does not address at all. American Express cannot fault Plaintiff for failing to follow a routing instruction that, by its own terms, was never directed at someone in his position, while simultaneously failing to explain why the one address it holds out to the public — staffed by its own employee, who accepted the documents and represented she was authorized to do so — produced thirty-seven days of silence.

## II. AMERICAN EXPRESS HAS STILL NOT SUBMITTED ANY SWORN STATEMENT FROM MS. ESPARZA

3

Plaintiff's Opposition [D.E. 35] established that the official federal Proof of Service (AO Form 440), executed under penalty of perjury by process server Richard Dominguez, states that Ms. Esparza "identified themselves as the person authorized to accept" service and that she "accepted service with direct delivery." American Express's original Motion to Set Aside characterized Ms. Esparza as someone who was simply "not authorized" to accept service, but offered no sworn evidence for that characterization.

American Express has now had ten days since Plaintiff's Opposition identified this evidentiary gap, and has filed a second declaration — yet that declaration still does not include any statement from Ms. Esparza herself. The Hamilton Declaration speaks only to an unnamed "Operations Assistant" in paragraph 12 and offers no first-hand account of what Ms. Esparza did, said, or believed about her own authority on May 5, 2026.

The party with direct, personal knowledge of the disputed fact — whether Ms. Esparza held herself out as authorized to accept service — is Ms. Esparza. American Express's continued failure to produce any sworn statement from her, even after the issue was squarely raised, leaves the sworn AO Form 440 unrebutted on the only record evidence that actually speaks to the moment of service.

### III. NOTICE TO AN AUTHORIZED AGENT IS NOTICE TO THE PRINCIPAL

It is a settled principle of agency law that notice to an agent acting within the scope of her actual or apparent authority is imputed to the principal. *See* Restatement (Third) of Agency sec. 5.03 (2006) (notice of a fact that an agent knows or has reason to know is imputed to the principal if knowledge of the fact is material to the agent's duties to the principal). Federal courts applying Rule 4(h) likewise hold that service upon an individual with apparent authority to accept process on behalf of a corporate defendant — including where that individual's own conduct manifests such authority — may constitute effective service notwithstanding the corporation's internal designation of a different registered agent.

Here, Ms. Esparza accepted service at the precise address American Express's own published policy designates for legal process directed to American Express National Bank, identified herself as authorized to accept that process, and did, in fact, accept it. Under the imputation principle, American Express's notice ran from the moment of that acceptance — May 5, 2026 — not from the moment its Litigation Team happened to learn of the filing five weeks later through a co-defendant's courtesy email. An internal failure to act on notice already received is not the same as an absence of notice, and it is not good cause to set aside a properly entered default.

## IV. THE UNDERLYING ACCOUNT HISTORY RECITED IN THE HAMILTON DECLARATION IS IMMATERIAL TO THIS MOTION

Paragraphs 3 through 11 of the Hamilton Declaration recount the origination of Mr. Page's Blue Cash Everyday® account, the balance owed, American Express's collection efforts, and a separate state-court collection action that was dismissed without prejudice in 2025. None of this bears on the question presented by American Express's Motion to Set Aside: whether American Express has shown good cause, a meritorious defense, and an absence of culpability sufficient to excuse its failure to timely respond to this action.

This is not a collection action, and Plaintiff's underlying account balance is not at issue. Plaintiff's Complaint alleges violations of the Fair Credit Reporting Act, 15 U.S.C. sec. 1681 et seq., arising from American Express's furnishing conduct — not a dispute over whether Mr. Page made payments on the account. Whether or not a balance was owed has no bearing on whether American Express furnished materially inaccurate or inconsistent information to the credit reporting agencies, nor on whether American Express has shown good cause to set aside its default. The Court should disregard this portion of the Hamilton Declaration as immaterial to the motion before it.

## V. CONCLUSION

For the reasons set forth above, and for the reasons previously set forth in Plaintiff's Opposition [D.E. 35], Plaintiff respectfully requests that this Court deny American Express's Motion to Set Aside Clerk's Entry of Default and grant Plaintiff's Motion for Default Judgment against Defendant American Express National Bank.

Dated: June 23, 2026

Respectfully submitted,

/s/ Braden Kevin Page

**Braden Kevin Page**

Plaintiff, Pro Se

4405 SW Lenox Avenue

Bentonville, Arkansas 72713

(479) 461-9188

SemperVeritasMinistry@proton.me

---

**CERTIFICATE OF SERVICE**

I hereby certify that on June 23, 2026, a true and correct copy of the foregoing Sur-Reply was filed via the Court's CM/ECF electronic filing system, which will send notification of such filing to all counsel of record.

/s/ Braden Kevin Page

Braden Kevin Page, Pro Se Plaintiff